IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEEP MARINE TECHNOLOGY, INC., §
§
     Plaintiff §
§
v. §    CIVIL ACTION NO. H-05-3690
§
CONMACO/RECTOR, L.P., §
§
     Defendant. §

MEMORANDUM AND ORDER

    Pending are Plaintiff Deep Marine Technology, Inc.'s Motion
for Partial Summary Judgment (Document No. 38), and its Motion to
Remand (Document No. 55) and Supplement thereto (Document No. 68).
After carefully considering the motions, responses, supplements and
the applicable law, the Court concludes as follows.

I.  Background

    This dispute arises out of a lease for a winch manufactured
and refurbished by Defendant Conmaco/Rector, L.P. ("Conmaco"), and
installed aboard a vessel belonging to Plaintiff Deep Marine
Technology, Inc. ("Plaintiff"). Plaintiff, a company incorporated
and with its principal place of business in Texas, sought to
acquire and install on its vessel a winch for use in its offshore
diving operations. Plaintiff contacted Conmaco, a Delaware limited
partnership whose citizenship allegedly depends on that of a single

individual, Duane P. Smith, spoke to one of its salesmen, and visited Conmaco's principal place of business in Belle Chasse, Louisiana.   Subsequently, Conmaco representatives met with Plaintiff at Plaintiff's Houston-area offices.   At that meeting, Plaintiff allegedly explained its need for a winch capable of raising and lowering loads weighing up to 50 tons to and from a subsea depth of up to 10,000 feet.   Conmaco's representatives allegedly recommended a DMW-250 single drum winch (the "Winch") and assured Plaintiff that the Winch possessed the foregoing capacity. Plaintiff contends that Conmaco's representatives "walked" Plaintiff through a notebook containing operation and performance specifications for the Winch, including two pages of data reflecting that the Winch possessed a capacity far greater than Plaintiff required.   Document No. 38 ex. 1 at 1-2.   After that meeting, the parties continued to negotiate terms via email. Document No. 41 ex. B at 78:25-79:8.   Defendant later sent an equipment lease (the "Lease") prepared in Louisiana to Plaintiff's Houston office.   Plaintiff's CEO signed the agreement and tendered it to Conmaco, allegedly in reliance on the representations made by Conmaco at the Houston meeting.   Document No. 38 at 3.   Conmaco is believed to have executed the agreement in Louisiana.[1]

---

[1] Although the parties cannot locate a copy of the Lease signed by Defendant, Defendant acknowledges that it is nonetheless bound to the Lease.   Document No. 38 at 4; Document No. 41 at 3.

Conmaco refurbished, repaired, and tested the Winch at its facility in Louisiana. Plaintiff's representatives visited the yard periodically to view the progress of the refurbishment and receive training from Conmaco regarding the operation of the Winch. Document No. 41 ex. B at 71:4-7, ex. A at 64:5-20. Upon its completion, Conmaco installed the Winch aboard Plaintiff's vessel, which was located off the coast of Louisiana. About one month later, while the vessel was operating in Louisiana waters, the Winch allegedly failed to perform as promised, thus causing Plaintiff to lose payments from customers that it would have received in Houston, and to incur costs that were paid out of its Houston office. Document No. 38 ex. 1 at 3.

Plaintiff filed suit in state court on September 21, 2005, alleging breach of contract, fraud, and negligent misrepresentation. Document No. 1 ex. A. Conmaco removed the case on October 28, 2005 on the basis of diversity jurisdiction and filed a counterclaim for breach of contract. Id. ex. A at 2; Document No. 36 at 5-6. Plaintiff moved to remand, asserting that the parties are not diverse because Duane P. Smith ("Smith"), the individual upon whom the citizenship of Conmaco depends, is a citizen of Texas, where he has lived since late August, 2005, when he and his family fled from New Orleans, Louisiana, in advance of Hurricane Katrina. Alternatively, Plaintiff moves for partial summary judgment asserting that its claims are governed by Texas law.

II.  <u>Discussion</u>

A.  <u>Plaintiff's Motion to Remand: Citizenship of Conmaco</u>

    1.  Legal Standards for Removal on the Basis of Diversity
        Jurisdiction

Plaintiff contends that diversity is lacking because Smith,
and hence, Conmaco, shares the same state of citizenship as
Plaintiff.  A defendant may remove to federal court a civil action
over which the federal court has diversity jurisdiction.
28 U.S.C. §§ 1332(a), 1441(b).  Federal district courts have
diversity jurisdiction over civil actions in which the amount in
controversy exceeds $75,000, exclusive of interest and costs, and
the parties are citizens of different states.  28 U.S.C. § 1332.
Whether diversity exists is determined at (1) the time the state
court action is filed; and (2) the time of removal.  *See* <u>Coury v.
Prot</u>, 85 F.3d 244, 249-50 (5th Cir. 1996).  The removing party
bears the burden of establishing that federal jurisdiction exists.
<u>De Aquilar v. Boeing Co.</u>, 47 F.3d 1404, 1408 (5th Cir.), *cert.
denied*, 116 S. Ct. 180 (1995).  Any doubt as to the propriety of
removal must be resolved in favor of remand.  *See* <u>Acuna v. Brown &
Root Inc.</u>, 200 F.3d 335, 339 (5th Cir.), *cert. denied*, 120 S. Ct.
2658 (2000); <u>Manguno v. Prudential Prop. & Cas. Ins. Co.</u>, 276 F.3d
720, 723 (5th Cir. 2002).  "In making a jurisdictional assessment,
a federal court is not limited to the pleadings; it may look to any

4

record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." Coury, 85 F.3d at 249.

The citizenship of an unincorporated association such as a limited partnership depends on the citizenship of all its partners. *See* Carden v. Arkoma Assocs., 110 S. Ct. 1015, 1018 (1990); Corfield v. Dallas Green Hills, LP, 355 F.3d 853, 856 (5th Cir. 2003). According to all circuits that have addressed the issue, this rule extends to limited liability companies. *See* Johnson v. Columbia Props. Anchorage, L.P., 437 F.3d 894, 899 (9th Cir. 2006); Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54-55 (1st Cir. 2006); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004); GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004); Homfeld II, L.L.C. v. Comair Holdings, Inc., No. 01-1151, 53 Fed. Appx. 731, 732-33, 2002 WL 31780184, at *1 (6th Cir. Dec. 3, 2002)(unpublished opinion); Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000); Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998). Moreover, citizenship of an unincorporated association must be traced through each layer of the association, however many there may be. *See* Meyerson v. Harrah's E. Chicago Casino, 299 F.3d 616, 617 (7th Cir. 2002)(per curiam); *accord* Kinder Morgan Liquids

5

Terminals, LLC v. Ponns & Co., No. CIV. A H-06-3225, 2006 WL 3691192, at *2 (S.D. Tex. Dec. 12, 2006) (Rosenthal, J.).

    2.   Citizenship of Duane P. Smith

    Here, Conmaco is comprised of two partners, DSS Management Company, LLC ("DSS") and D. Smith & Sons, LLC ("D. Smith & Sons"), which is also the sole member of DSS.  Document No. 59 ex. C at 15; Document No. 59-2 ¶ 6.  D. Smith & Sons is managed by Smith and has three members: Smith, the Cameron Duane Smith Trust, and the Duane Patrick Smith, Jr. Trust.  Document No. 59 ex. C at 14, ex. D at 17.  Because Smith serves as Trustee of both the CPS and DPS Trusts, id. exs. E, F, the citizenship of the trusts depends on that of Smith.  See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 931 (2d Cir. 1998)(citing Navarro Savings Ass'n v. Lee, 100 S. Ct. 1779 (1980)); Hemenway v. Peabody Coal Co., 159 F.3d 255, 257 (7th Cir. 1998); Ronald Alexander Leblanc Trust v. Ransom, 276 F. Supp. 2d 647, 651 (S.D. Tex. 2003)(Hittner, J.).  In sum, tracing through the various levels of Conmaco reveals that its citizenship turns on that of a single individual, Smith, as manager of Conmaco's limited partners, DSS and D. Smith & Sons, member of D. Smith & Sons, and trustee of its only other members.

    The parties dispute whether Smith, after he relocated to Texas in advance of Hurricane Katrina, possessed an intent to remain in Texas such that he should be deemed a citizen of Texas for

diversity purposes.  The citizenship of an individual is synonymous with his domicile.  *See* Coury, 85 F.3d at 249; Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954).  An individual is domiciled in the place where he has "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ."  Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974)(quoting Stine, 213 F.2d at 448); *accord* Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 815 (5th Cir. 2007)("[C]itizenship requires residency and the intent to return or remain in the state.").  Determining a litigant's domicile requires examination of the totality of the circumstances, including such factors as where a litigant (1) exercises political or civil rights; (2) pays taxes; (3) holds licenses; (4) maintains bank accounts; (5) belongs to clubs and churches; (6) operates a business or is employed; and (7) maintains his family home.  *See* Coury, 85 F.3d at 251.  Additionally, "[t]here is a presumption of continuing domicile that applies whenever a person relocates.  In order to defeat the presumption and establish a new domicile . . . , the person must demonstrate both (1) residence in a new state, and (2) an intention to remain in that state indefinitely."  Acridge v. Evangelical Lutheran Good Samaritan Soc'y, 334 F.3d 444, 448 (5th Cir. 2003).

Here, the facts related to Smith's citizenship must be viewed against the backdrop of Hurricane Katrina and its profound impact

7

on the City of New Orleans, including the compulsory evacuation of its residents, and the havoc wrought by this massive storm which damaged or destroyed nearly 850,000 homes, *see* <u>Preston</u>, 485 F.3d at 817, and all but eviscerated the city's infrastructure.   Before Katrina, Smith was a lifelong resident of New Orleans, and was then living with his family in a home purchased by Smith in 2003. Document No. 59 ex. H; Document No. 68-2 at 6:14-18.  On August 27, 2005, and in accordance with the government's mandatory evacuation orders, Smith and his family fled New Orleans for Destin, Florida, bringing with them only three or four days worth of clothing. Document No. 59-2 ¶ 18; Document No. 68-2 at 13:1-4, 18:15-20. While in Florida, Smith received word that the flood waters attendant to the storm and resulting breach of the levies had left the first floor of his two-story home submerged in nine feet of water.   Document No. 68-2 at 15:8-16:1.   At the time, city officials predicted that the water in Smith's neighborhood would not be drained for another six months.   <u>Id.</u> at 16:6-17:7. Meanwhile, the city was under marshal law, with the National Guard barring entry to Smith's neighborhood.  <u>Id.</u> at 17:12-17.  In light of these uncertainties, and recognizing the need to enroll his children in school, the Smith family traveled to League City, Texas, in early September to stay with relatives.   <u>Id.</u> at 18:8- 19:14.

Smith maintains that his intent upon his arrival in Texas, and at all ensuing times, was to rebuild his family home and return to New Orleans.  Document No. 59-2 ¶¶ 32, 34.  Ample evidence supports this contention, including Smith's maintenance of a bank account in Louisiana, renewal of his Louisiana driver's license in 2006, exercise of political rights as a Louisiana citizen in 2006 by voting in the New Orleans mayoral election, payment of Louisiana and New Orleans income and property taxes for 2005, and claim of homestead exemption for his New Orleans home in 2005, 2006, and 2007.  Document No. 59 exs. G, I, J, N; Document No. 68-2 at 61:2-71:5.  More importantly, when this case was removed on October 28, 2005, only two months after the evacuation of New Orleans, Smith had only recently been allowed to enter his New Orleans neighborhood and assess the damage to his family home.  At that time, there still was no utility service in the area, and the city government had not yet begun to issue building permits.  Document No. 68-2 at 72:4-13, 16-19, 89:14-17.  Moreover, the New Orleans school attended by the Smith children had not reopened, which also was the case with all other schools in New Orleans Parish.  Id. at 72:20-73:16.

Based on the evidence presented, and a common-sense understanding of the uncertainties and obstacles that Smith faced in the wake of Katrina, Smith's conduct in September and October, up to and including the date this action was removed, is wholly

consistent with his asserted intent to return to New Orleans and not to remain in Texas. *Cf.* <u>Preston</u>, 485 F.3d at 819 (agreeing with <u>Caruso v. Allstate Ins. Co.</u>, 469 F. Supp. 2d 364 (E.D. La. 2007), that determining the citizenship of Katrina evacuees "warrants the court's incorporation of common-sense as part of the calculus"). Under these circumstances, Smith's decision to seek refuge in Texas and establish some normalcy for his family by enrolling his children in school, renting a house close to his extended family, attending a local church, and temporarily opening a bank account in the area, *see* Document No. 68-2 at 20:9-12, 23:5-24:23, 27:3-16, does not equate to an intent to remain indefinitely in Texas, such as to render him a domiciliary of this state. Even if Smith later decided to remain in Texas, any change in his domicile after removal of this action does not impact the diversity analysis. *See* <u>Coury</u>, 85 F.3d at 249 ("If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties."); *accord* <u>Global Container Lines, Ltd. v. Int'l Bldg. Sys. LLC</u>, No. Civ. A. H-04-0456, 2006 WL 870447, at *2 n.5 (S.D. Tex. Mar. 28, 2006)(rejecting defendants' arguments that a corporate plaintiff's construction of new corporate offices in a different state after removal of the action impacts the diversity analysis). The Court therefore concludes that Conmaco has carried its burden of demonstrating that Smith, and thereby, Conmaco, was a citizen of

10

Louisiana at all relevant times.  Accordingly, the parties are diverse, and Plaintiff's motion to remand is denied.

B.   Plaintiff's Motion for Partial Summary Judgment: Choice of Law

1.   Summary Judgment Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive

11

evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct.
2505, 2513 (1986).  All justifiable inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.</u>, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in
this light, could not lead a rational trier of fact to find" for
the nonmovant, then summary judgment is proper.  <u>Kelley v. Price-
Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing
<u>Matsushita</u>, 106 S. Ct. at 1351).  On the other hand, if "the
factfinder could reasonably find in [the nonmovant's] favor, then
summary judgment is improper."  <u>Id.</u>  Even if the standards of Rule
56 are met, a court has discretion to deny a motion for summary
judgment if it believes that "the better course would be to proceed
to a full trial."  <u>Anderson</u>, 106 S. Ct. at 2513.

2.   General Legal Standards: Choice of Law

The parties dispute whether Texas or Louisiana law governs
Plaintiff's claims.  In diversity cases, federal courts apply the
choice-of-law principles of the forum state--in this case, Texas.
*See* <u>Ingalls Shipbuilding v. Fed. Ins. Co.</u>, 410 F.3d 214, 230 (5th
Cir. 2005); <u>Mayo v. Hartford Life Ins. Co.</u>, 354 F.3d 400, 403 (5th
Cir. 2004)(citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 61 S. Ct.
1020 (1941)).  "Texas courts use the ALI Restatement's 'most
significant relationship test' for all choice of law cases except

12

those contract cases in which the parties have agreed to a valid choice of law clause." Spence v. Glock, Ges.m.b.H, 227 F.3d 308, 311 (5th Cir. 2000) (citing Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984)). When applying the substantial relationship test, it is not the number of contacts, but the qualitative nature of those contacts that controls. *See* Jackson v. W. Telemktg. Corp. Outbound, 245 F.3d 518, 523 (5th Cir. 2001); Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc., 175 S.W.3d 284, 291 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). Because the analysis is issue-specific, there may be occasions when separate claims in a single suit are governed by the law of different states. *See, e.g.*, Scottsdale Ins. Co., 175 S.W.3d at 291 ("Texas law may apply to some claims, but not other claims."); *see also, e.g.*, SnyderGeneral Corp. v. Great Am. Ins. Co., 928 F. Supp. 674, 677-78 (N.D. Tex. 1996) (concluding Minnesota law governed plaintiff's contract claim, while Texas law applied to its bad faith claim against the same defendant).

    a.   Breach of Contract

Plaintiff contends that Texas law governs its breach of contract action, and hence, its claim for attorney's fees. Document No. 38 at 9-10. "'The award of attorneys' fees is governed by the law of the state whose substantive law is applied to the underlying claims.'" Ingalls Shipbuilding, 410 F.3d at 230

13

(quoting <u>Kona Tech. Corp. v. S. Pac. Transp. Co.</u>, 225 F.3d 595, 614 (5th Cir. 2000)).  While Texas law allows recovery of attorney's fees to a prevailing party on a breach of contract claim, Louisiana law does not permit recovery of fees unless provided by contract. *Compare* Tex. Civ. Prac. & Rem. Code § 38.001(8) (authorizing attorney's fees for breach of contract), *with* <u>Willett v. Premier Bank</u>, 696 So.2d 196, 201 (La. Ct. App. 1997)(explaining that, under Louisiana law, attorney's fees are not recoverable for breach of contract without an express contractual provision providing for such recovery).  Thus, a choice of law determination is necessary when, as here, the relevant jurisdictions conflict regarding the availability of attorney's fees in a breach of contract action. *Cf.* <u>Kucel v. Walter E. Heller & Co.</u>, 813 F.2d 67, 73-74 (5th Cir. 1987)(analyzing whether Texas or Illinois law governed the disputed contract, and hence, the request for attorney's fees).

When, as in this case, the choice of law is neither prescribed by contract nor by statute, Texas courts look to the general factors listed in the ALI Restatement (Second) of Conflict of Laws to determine the governing law:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,

14

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Spence, 227 F.3d at 311-12 (quoting the Restatement § 6(2)); *accord* Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 442-43 (Tex. 2007). With respect to contract actions, the Restatement instructs courts to consider: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See* Minn. Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 735-36 (Tex. 1997) (citing the Restatement § 188(2)).

The factors particular to contract claims weigh heavily in favor of applying Louisiana law. The Winch, the subject of the Lease, was at all relevant times located in or off the coast of Louisiana. Likewise, Conmaco's refurbishment and installation of the Winch occurred entirely in Louisiana. Thus, all performance, including the alleged failure of the Winch to perform in accordance with the Lease, other than Plaintiff's payments under the Lease, took place in Louisiana. The remainder of the factors are at best neutral. The place of contracting was split between Houston, where

15

Plaintiff signed the Lease and tendered it to Conmaco, and Louisiana, where the contract was drafted and accepted by Conmaco. Though some of the negotiations took place during the parties' meeting in Houston, the uncontroverted evidence substantiates that, following the meeting, the parties continued to negotiate terms via interstate communications. As to the remaining factor, Conmaco's registration in Texas as a foreign limited partnership may be analogous to establishing a type of "residence" in Texas, but given that Plaintiff and Conmaco maintain their principal places of business in Texas and Louisiana, respectively, this factor is likewise equivocal. Thus, on balance, the relevant factors point to the application of Louisiana law.

Nor does the result change upon evaluating the general policy concerns pertinent to a choice of law analysis. The only consideration cited by Plaintiff is the alleged prevailing policy interest of Texas in providing for recovery of attorney's fees to a party who successfully prosecutes a breach of contract claim, even against a foreign defendant. Document No. 38 at 9-10. However, it is unlikely that the interest of Texas in providing for attorney's fees is broader than its interest in the underlying contract, which in this case is second to that of Louisiana. Moreover, given that Plaintiff sought out and transacted with a Louisiana-based company, visited Defendant's Louisiana facility periodically before and after entering into the Lease, took

16

delivery of the Winch in Louisiana, and installed it aboard Plaintiff's vessel off the coast of Louisiana where it was used in Plaintiff's Louisiana operations until it failed, it can hardly be said that the application of Louisiana law would violate Plaintiff's justified expectations.  When, as here, the public policy factors are neutral or equivocal, courts give greater weight to other considerations, namely, the place of contracting, negotiation, and performance, which under these facts on balance favor the application of Louisiana law.  *See, e.g.*, <u>Minn. Mining & Mfg. Co.</u>, 953 S.W.2d at 736-37 (holding the place of contract, negotiation, and performance controlled in a breach of warranty case when no particular jurisdiction possessed a dominant policy interest).  Accordingly, Plaintiff's motion urging the application of Texas law to its contract action and its related claim for attorney's fees is denied.

### b.  Fraud and Negligent Misrepresentation

Plaintiff also contends that its claims for fraud and negligent misrepresentation are governed by Texas law, which, unlike Louisiana law, allows for the recovery of exemplary damages. However, neither Texas nor Louisiana provides for exemplary damages in negligent misrepresentation actions.  *See* <u>Beal Bank, S.S.B. v. Schleider</u>, 124 S.W.3d 640, 650 n.5 (Tex. App.--Houston [14th Dist.] 2003, pet. denied)(noting the unavailability of exemplary damages

for negligent misrepresentation under Texas law); _Int'l Harvester_
_Credit Corp. v. Seale_, 518 So.2d 1039, 1041 (La. 1988)(explaining
that Louisana does not authorize exemplary or punitive damages
unless specifically provided by statute).  Plaintiff cites no other
grounds for distinguishing Texas and Louisiana law.  Absent actual
conflict between the potentially applicable law, the Court declines
to engage in a choice-of-law analysis and holds that Plaintiff's
negligent misrepresentation action is governed by the law of the
forum state, in this case, Texas.  _See_ _Mumblow v. Monroe Broad.,_
_Inc._, 401 F.3d 616 (5th Cir. 2005)(noting that the law of the forum
state applies when the laws of the states do not conflict); _W.R._
_Grace & Co. v. Cont'l Cas. Co._, 896 F.2d 865, 874 (5th Cir. 1990)
("If the laws of the states do not conflict, then no choice-of-law
analysis is necessary.").

As for Plaintiff's fraud claim, the predicate conflict exists
because Texas allows for the recovery of exemplary damages, and
Louisiana does not.  _See_ _Prairie Producing Co. v. Angelina Hardwood_
_Lumber Co._, 882 S.W.2d 640, 652 (Tex. App.--Beaumont 1994),
_modified on rehearing_, 885 S.W.2d 640 (Tex. App.--Beaumont 1994,
writ denied)(noting that, unlike Texas, Louisiana allows for
punitive or other damages only in certain toxic tort or drunk
driving cases); _see also, e.g._, _Dixon v. Bohn_, 890 So.2d 613, 615
n.2 (La. App. 5 Cir. 2004)(holding that Louisiana law does not
provide for punitive damages in a fraud action).  To determine the

18

jurisdiction whose law should govern a fraud action, Texas courts examine:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 727 n.4 (5th Cir. 2003)(quoting the Restatement § 148(2)); Greenberg Traurig of N.Y., P.C. v. Moody, 161 S.W.3d 56, 71 (Tex. App.--Houston [14th Dist.] 2004, no pet.); Grant Thornton L.L.P. v. Suntrust Bank, 133 S.W.3d 342, 358 (Tex. App.--Dallas 2004, pet. filed); Tracker Marine, L.P. v. Ogle, 108 S.W.3d 349, 355-56 (Tex. App.--Houston [1st Dist.] 2003, no pet.).   "If any two of the above-mentioned contacts, apart from the defendant's domicile, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." Grant Thornton, L.L.P., 133

S.W.3d at 358 (quoting the Restatement § 148 cmt. j).  Addi-
tionally, a presumption exists favoring the law of the state in
which the fraudulent representations were made and received, if
plaintiff also relied on the representations in that state.  *See*
Vanderbilt Mortgage & Fin., Inc. v. Posey, 146 S.W.3d 302, 315
(Tex. App.--Texarkana 2004, no pet.)(citing the Restatement
§ 148(1)).

Consideration of these factors reveals that Texas law should
govern Plaintiff's fraud action.  Plaintiff's claim arises from
alleged misrepresentations regarding the capacity of the Winch made
by Conmaco representatives to Plaintiff during a meeting at
Plaintiff's Houston office.  Plaintiff relied on these misrepre-
sentations in Houston by executing the Lease in Houston.  When the
Winch allegedly failed, Plaintiff incurred out-of-pocket expenses
which it likewise paid out of its office in Houston, and lost
payments from customers it would otherwise have received in
Houston.  Although the Winch was located in Louisiana at all
relevant times, and the parties' principal places of business are
split between Louisiana and Texas, the critical facts supporting
Plaintiff's fraud claim occurred in and were directed at Plaintiff
in Texas.  Moreover, as between Texas and Louisiana, Texas clearly
has the prevailing interest in punishing wrongdoers who perpetrate
frauds in Texas and against Texas citizens.  Texas law protects
this interest by authorizing exemplary damages for fraudulent

misrepresentation, including punitive damages that are designed "to punish a party for its 'outrageous, malicious, or otherwise morally culpable conduct' and to deter it and others from committing the same or similar acts in the future." Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 40 (Tex. 1998); *see also* TEX. CIV. PRAC. & REM. CODE § 41.001(5) (defining exemplary damages as damages awarded as a penalty and not for compensatory purposes, and including punitive damages). Accordingly, the Court concludes that Texas has the most significant relationship to Plaintiff's fraud action, and its law therefore governs this claim.

## III.  Order

It is therefore ORDERED that Plaintiff Deep Marine Technology, Inc.'s Motion to Remand (Document No. 55) is DENIED; Plaintiff's Motion for Partial Summary Judgment (Document No. 38) is GRANTED IN PART, and the Court will apply Texas law to Plaintiff's fraud and negligent misrepresentation claims.  In all other respects, the motion is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 26th day of June, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE